MATTHIAS KUEN, Executor, v. HENRY UPMIER, Appellant.

98  393<br>102  490

**Pleading and Practice:** DIVISION OF ANSWER. Where certain matters are plead in one division of an answer, and the same with additional matter in a second, evidence which tends to establish the second while it fails to prove the first division, will be treated as having been offered to sustain the second division.

**Pleading and Proof:** EVIDENCE OF CONTRACT: *Release of mortgage.* In a suit upon a note one division of the answer averred that defendant, under a contract with payee, was to and did perform certain services for payee which should be received for full payment of said note.

A second division repleaded this, and added that the note in suit was one of three, and that after payment of the other two, the payee, to carry out said agreement, and in consideration of said services, executed a release of the mortgage which secured all three of the notes.

A third division pleaded that the release was intended to discharge defendant from all liability on the note in suit, and as a conclusion, that it operated as a gift of the debt.

The proof tended to show the rendition of said services, and a written release of the mortgage was put in. There was none that the services were rendered pursuant to any agreement that they should pay the note in suit. *Held:*

    a. The first division, asserting nothing but a *contract* to apply services on a note, fails for want of proof of such contract.

    b. But the matters set out in the divisions 2 and 3, should have gone to the jury because:
        *First,* While there was no direct proof that the contract was made, there is proof tending to show that things were done by both parties which would be in execution of the contract, if one was made.
        *Second,* The doing by both, of what one claims should have been done under a contract, is *prima facie* evidence that there was an agreement to do them.

*Third,* The release was *prima facie* evidence that the note in suit was paid, without evidence to prove a contract that certain services should pay that note.

**Conclusions of Witnesses.** When the ability of a party to speak English is in issue, a witness may say "she spoke in broken English so that she could be understood." He may be asked "When you would talk with her in English, did she appear to understand what you said?" and "when you would talk to her in English, would you have to repeat it over and over, or would she respond without? Would her answers be responsive when you put a question to her?"

*Appeal from Johnson District Court.* — Hon. M. J. Wade, Judge.

Thursday, May 21, 1896.

Action on a promissory note. Judgment for the plaintiff, and the defendant appealed.—*Reversed.*

*Joe A. Edwards* and *James Hart* for appellant.

*Cato Sells* and *Baker & Ball* for appellee.

Granger, J.—The plaintiff is the executor of the last will and testament of Ursula Upmier, deceased. On the twenty-fourth day of December, 1885, the defendant made to Ursula Upmier his promissory note for one thousand dollars, on which this action is based. As a defense to the note, defendant pleaded, in the first division of his answer, that "on the day when said promissory note was executed, and after the execution and delivery of the same to the said Ursula Upmier, it was verbally agreed between this defendant and the said Ursula Upmier, that this defendant should furnish the said Ursula Upmier, near defendant's residence, a certain house to live in, so long as she should remain there, and certain supplies and provisions, and should render her certain services, and all of which as then so

agreed upon are hereinafter more fully set out, and
that, as the said Ursula Upmier might need the same
for her expenses or support during her life time, that
this defendant should pay on said note such sums of
money from time to time as the said Ursula Upmier
should need for said purpose, and should demand of
this defendant; and it was then further verbally
agreed between this defendant and the said Ursula
Upmier that the use of the house to be so furnished,
and such supplies and provisions, and such services to
be so rendered, and such money to be so paid when so
needed and demanded, should be received in full pay-
ment, satisfaction, and discharge of the note sued
upon in this action." The averments show a perform-
ance of the agreement on the part of the defendant,
because of which it is said the note is fully paid.

2      The second division of the answer re-pleads the
facts in the first division, and in addition shows
that at the time of the execution of the note in suit,
he made to Ursula Upmier three other promissory
notes, in amount so that, including the one in suit,
they aggregated two thousand eight hundred dollars,
and that all of said notes were secured by a mortgage
on certain real estate executed by defendant and his
wife; that on the tenth day of November, 1891, all
of said promissory notes, except the one in suit,
were fully paid by defendant; that Ursula Upmier
was then in her last sickness, from which she
soon after died; that in consideration of said
agreement, and in consideration of the things
so furnished and of the services so rendered, and of
the payments so made, and for the purpose of carry-
ing out said agreement, the said Ursula Upmier exe-
cuted a release as follows: "Know all men by these
presents, that I, Ursula Upmier, do hereby certify
that a certain mortgage for the sum of $2,800, bear-
ing interest on the twenty-fourth day of December,

1885, made and executed by Henry Upmier and Antonie Upmier, his wife, on the following described real estate, * * * is redeemed, paid off, satisfied, and discharged." The second division concludes with averments that the note is fully paid. The third division of the answer shows that the defendant was a stepson of Ursula Upmier, who was a widow; that she was well advanced in years, and infirm, and so remained to her death; that defendant made expenditures in her behalf, and rendered services for her in various ways, for which no charge was made, or account kept; that, after the payment of the other notes specified in the second division of the answer, the said Ursula Upmier, being grateful to defendant, on account of his expenditures and services in her behalf, executed the release set out in the second division of the answer, intending to discharge defendant from all liability on the note in suit. And as a conclusion, it is averred that the execution of the release operated as a gift of the debt, because of which the plaintiff is estopped to recover on the note. A reply admits the execution and payment of the other three notes, and denies all averments as to agreements by which the note in suit was to be paid, or any understanding that the note or debt was a gift, and denies that the services or expenditures were so made or rendered. As to the release, it is averred that Ursula Upmier was then so aged and infirm that she did not know, and was not capable of understanding, what the instrument was, and did not so understand; that she could not read, write, or speak the English language; and that the release was obtained by misrepresentation and fraud.

At the close of the evidence the plaintiff moved the court to instruct the jury to return a verdict for him for the amount of the note, on the ground that, conceding all the evidence introduced to be true, it is

not sufficient in law to sustain a verdict for the defendant on either division of the answer. The court sustained the motion as to the issues involved in the first and second divisions of the answer, and overruled it as to the other, and complaint is made of the ruling.

The question involves a consideration of the evidence. The issue presented by the first division is, whether there was an agreement that, in consideration of the things to be done by defendant as alleged, the note should be paid or satisfied. While there is evidence as to the services rendered and expenditures made in behalf of Ursula Upmier we think that there is no showing that the things were done in pursuance of any agreement, so that they could be treated, in law, as a payment, and it is as such that they are pleaded. As to this division of the answer, we think that there was no error. In view of what is to be said as to the second division, we have not discussed the evidence as to the first; the same facts being pleaded in both divisions, with some additional facts in the second.

We think that the district court is in error in holding that, in effect, there is no evidence on which the jury should be permitted to pass, as to the second division of the answer. We understand that the facts as to the additional notes, their payment, the mortgage to secure the notes, and its release, are pleaded alone with reference to the second and third divisions of the answer, and not as to the first; and hence, in our consideration of the case, we adopt that theory of the issues, and we do not determine what might otherwise be the situation as to the first division. With that view of the pleadings, we treat the evidence as having been offered to apply to the facts as pleaded in the different divisions; and, treating it in that way, we have held that there is no evidence to show the agreement pleaded in the first division on

which a verdict could rest.  As to the second division, the situation is materially different.  While the same agreement is there pleaded, it is also pleaded that the note in suit was, with others, secured by mortgage on real estate; that the other notes have been paid, which is admitted; and then it is pleaded that in consideration of the agreement pleaded, and the things done thereunder, Ursula Upmier executed the release, which is an acknowledgment that the note in suit is paid.  It is said in argument that, "without having proved the agreement alleged in the answer as to the manner of paying the notes, the release itself is not evidence of the payment."  We do not so understand the rule.  The release of itself is *prima facie* evidence of payment.  In *Fleming v. Parry*, 24 Pa. St. 47, speaking of releases, it is said: "*Prima facie*, they would indeed import extinguishment of the debt as well as the mortgage, and the burden of showing that they were not so intended was on the creditor." *Chappell v. Allen*, 38 Mo. 213.  In Jones, Mortg. section 984, it is said: "A deed of release in the ordinary form * * * contains an express acknowledgement of the payment of the debt, and in such case would be *prima facie* evidence of it, unless fraud or mistake be shown in making such entry or release."  We have this state of the record:  An executory contract is averred.  There is no direct proof of the making of the contract, but things have been done by both parties that would, if the contract was made, be in execution of it.  The work has been done and payment has been made as alleged.  The facts involve the acts of both parties.  We think the doing of the things, and the payment therefor, are at least *prima facie* evidence of an agreement to that effect.  In speaking of what are the facts and what is the record, we must be understood as only stating what the evidence tends to prove

and not what facts could be found from all the evidence. For the purposes of the motion, we assume, in favor of appellant, all facts of which there is evidence, to make a substantial conflict. We think the state of the evidence is such, that the issues on the second division of the answer should have been submitted to the jury.

II. The issues involved an inquiry as to Mrs. Upmier being able to speak the English language. A Mr. McQuinn, who was present when Mrs. Upmier executed the release, was a witness for defendant, and, after stating some facts, was asked, "What was her ability to speak English?" He said: "She spoke in broken English, so that she could be understood." The court sustained a motion to strike out the last part of the answer, as a conclusion. The ruling was erroneous, It is certainly proper for a witness to state whether a person talks so as to be understood in a language the witness understands. It is, of course, a conclusion, but all statements are, more or less, conclusions. It was, at the same time, a fact, of which the jury could be told, as evidence from which to form its conclusions. It was not a conclusion to be drawn from the evidence, so that the jury as well as the witness would draw it. The witness was asked, "When you would talk with her in English, did she appear to understand what you said?" The question was rejected as incompetent and immaterial. It was both competent and material. The answer would go directly to the fact of her ability to understand the English language. For the same reasons, the witness should have been permitted to answer the following questions: "When you would talk to her in English, what is the fact as to whether you would have to repeat it over and over, or whether she would respond without repeating what you said to her?" "I will ask you as to whether or not, when you

put a question to her, her answer would be responsive to that question?" There are numerous questions as to the admission and exclusion of evidence, but these rulings will sufficiently indicate our views to guide on another trial. There are complaints as to the instructions, but there are none that we need notice, because our holding as to the ruling on the motion will indicate the necessary changes to be made. The judgment is REVERSED.