## SHEPERD *versus* ADAMS.

If a person purchases land, (from one who had previously conveyed the same in mortgage,) and then sells the same at different times in separate parcels to several purchasers, *it may be,* that, *in equity,* the portion last conveyed, if of sufficient value, will be chargeable with the whole mortgage debt.

*In this case, the last sold portion was of sufficient value to discharge the mortgage, and the purchaser thereof bought in the mortgage debt, and took an assignment of the mortgage, and foreclosed the same. He then, under a claim of title to the whole tract, released to the purchaser of the first sold portion, his, (the assignee's,) right in this portion, upon being paid by said purchaser, a sum of money therefor. Held, that said releasee could not, in an action at law against the releasor, recover back the money, though paid under a belief that the releasor, when giving the release, had title to the whole tract.*

*Whatever may be the right of the releasee, his remedy is at equity alone.*

Carr, for the plaintiff.

J. Godfrey, for the defendant.

TENNEY, J. — Amasa Stetson being the owner of lot No. 143, on Pine street, in Bangor, conveyed it to one Stephen Goodhue, on June 1, 1822, taking back a mortgage from his grantee at the same time of the premises conveyed, for the security of a note therein described. On December 1, 1825, Goodhue conveyed the premises to John N. Mayhew, who on September 22, 1829, conveyed to Nathaniel Lincoln. On September, 1829, the plaintiff received from Lincoln a deed of the northerly half of the lot, undivided, and he conveyed the same by a warranty deed to John A. Wallis, dated July 9, 1845. On December 29, 1829, Lincoln conveyed the southerly half of the lot to Rufus Banks, and the same passed through several *mesne* conveyances to the defendant on July 17, 1843.

The mortgage from Stephen Goodhue to Amasa Stetson was assigned to Charles Stetson on July 7, 1842, and by Charles Stetson to the defendant on July 25, 1843, who is the holder of the note secured thereby. The mortgage became foreclosed on June 15, 1847. The defendant received the sum, which he was satisfied to take as a consideration of a release of the northern half of the lot, on August 7, 1847, which release he contracted to execute to John A. Wallis or such other person as he should order, whenever he should make out a deed and present to the defendant for signature. It was shown in evidence, that the value of the southern half of the lot, was equal at least to the sum remaining due

upon the note referred to in the mortgage at the time, when Lincoln conveyed it to Rufus Banks. It is insisted by the plaintiff, that the evidence shows that the sum paid to the defendant, was done under the belief, that the defendant had acquired a perfect title to the land by virtue of the mortgage and its foreclosure, when in fact, by a well settled principle in equity, the mortgage upon the northern half of the lot was fully discharged before the foreclosure. This action is brought for the recovery of the money so paid by mistake.

The mortgager having conveyed the northern prior to the southern moiety of the lot, it is contended by the plaintiff, that the latter portion, exceeding in value the sum due upon the mortgage, was charged with the entire amount unpaid, and that the grantee of the mortgager of the part last conveyed, having notice of the former conveyance, is in the same condition of his grantor ; and that this charge attached afterwards to every grantee, having notice of the facts. Such a principle has been recognized in equity, and has been acted upon in certain cases, to which it was supposed to be applicable. *Gill* v. *Lyon,* 1 Johns. Ch. 447 ; *Clowes* v. *Dickenson, & al.* 5 Johns. Ch. 235 ; *Holden* v. *Pike,* 24 Maine, 436 ; *Cushing* v. *Ayer,* 25 Maine, 383. Judge Story, in his Commentaries on Equity Jurisprudence, sect. 1233, a, considers this doctrine as highly reasonable, as to the original incumbrances, but expresses doubts, whether the position as between subsequent purchasers and incumbrances, is maintainable on principle.

Upon the assumption, however, that the doctrine is well established in equity, in its fullest extent, and the facts in this case are such that it is applicable in a proper suit, we think there are obstacles to the maintenance of the present action, which are insurmountable. It will be sufficient to consider one of them.

" If several estates are mortgaged by one mortgage, and the mortgager afterwards conveys the estates separately to different persons, although each owner of the separate estate may

redeem, yet it can only be allowed by the payment of the whole mortgage debt. And the party so redeeming will be entitled to hold over the whole estate mortgaged, until he shall be reimbursed what he has thus been compelled to pay beyond his due proportion. He is considered as assignee of the mortgage, and stands after such redemption, in the place of the mortgager, in relation to the other owners of the property." *Gibson* v. *Crehore*, 5 Pick. 146.

After the defendant became the assignee of the mortgage from Goodhue to Stetson, and the holder of the note, described in the condition thereof, and before foreclosure of the mortgage, he was entitled to hold the estate, unless the party claiming the northerly half resorted to measures authorized by the law, to relieve that portion from the incumbrance. The one having the mortgager's interest in this part, could resort to the process provided by the statute, for the purpose of ascertaining whether any part of the sum due upon the note, was a charge upon it; and if so, what proportion of that sum, in order that it might be paid, and the land discharged; and if there was no charge upon that moiety of the land, it would be important that it should be judicially established. R. S. chap. 125, sect. 16, 17 and 18. The principle invoked, it is believed, has never been applied in suits at law. A party cannot be affected thereby excepting in equity proceedings. One who has purchased of the mortgager a part only of the estate encumbered by a mortgage, and placed himself by the assignment in the position of the mortgagee, can have no claim upon the owners of the residue of the mortgager's right, for contribution, it being optional with the latter to redeem the land, or suffer it to be forfeited. But if they should wish to redeem, they can enforce their right to do so only in a bill in equity, in the manner provided by law, no suit at law being open to them. *Hill* v. *Payson & al.* 3 Mass. 559; *Carle* v. *Butman*, 7 Greenl. 102. The plaintiff having paid the money to the defendant by a mistake of the law or the facts, cannot be the means of allowing him the benefit of

the principle he relies upon in a suit at law, when without the mistake, it could be available only in a suit in equity.

*Plaintiff nonsuit.*

NOTE. — WELLS, J. took no part in this decision.